Good morning, your honors and may it please the court. My name is Mark Ebert and I am representing Mr. Thompson. I'm going to have to make an unusual request, which I kind of presaged in my supplemental authorities yesterday. I'm respectfully asking the court to stay this case to allow for supplemental briefing. Well, counsel, we'll consider that, but I think we're ready to proceed with the argument today that we have set. You're welcome to tell us why you think supplemental briefing is necessary, but we're going to proceed with argument. All right. Just in very brief form, because this case was proceeding simultaneously in state court, and the record and the issue evolved differently in state court. And I thought that to be fair to both the court and Mr. Thompson, the court needed to get more information than it doesn't have based on the briefs that I filed in 2018. That's the reason. All right. I'll go ahead with the argument. At sentencing, Mr. Thompson repeatedly denied both personally and through his counsel that he had a prior felony conviction. He said he only had misdemeanors. He said he'd never been to state prison. And that turns out to be true. The trial court made it clear that it considered it important in deciding the sentence, whether the prior alleged the prior that was alleged was a felony or misdemeanor, saying several times there would be significant to her sentence that she would be swayed by that. And she asked probation and the prosecutor twice to give them continuances to determine whether it was a misdemeanor or a felony. She said, quote, If it was a misdemeanor, then I should not. I cannot sentence a man to four consecutive life sentences because of his prior criminal history. If we don't have that showing. But when after the continuances, the information the judge wanted couldn't be verified. She went ahead with the sentencing, holding that she had sufficient evidence to convince her that the person named in the in the rap sheet was or at least the convictions in that rap sheet were Mr. Thompson's, adding that if something changed, this could be reviewed later. About 25 years later, Mr. Thompson obtained the record showing that the conviction that the counsel let's cancel it. I want to I want to stop you there. Sure. Because even if we thought that that a mistake was made and that it needed to go back, all of which may be moved in light of the further proceedings before the Nevada courts. How has your client been diligent? Why couldn't you have just figured this out earlier? You you filed. He's filed a number of petitions for habeas corpus, both state and federal court. You're here on the second. One of the requirements is that you have been diligent and demonstrate to the court that you could not in the exercise of diligence have obtained this information. Yet all of this seems pretty straightforward stuff that I understand a long time ago. I understand. Yes, it is true that Mr. Thompson knew all along that he didn't have a prior felony conviction. He said it over and over again, three times to the sentencing judge, I believe, as well as to his trial in his appellate counsel. And he raised it on direct appeal, although under a different theory than what is being said here. It was the enemy. He also raised it in his first habeas petition. He said on direct appeal. But I mean, the 14th Amendment claim in his first habeas petition. He claimed his due process was violated by relying on unreliable and suspect evidence of prior convictions. Yes. But here he is. First of all, that was part of the change that occurred during the court. The state court proceedings that happened while we were in mediation, which is that the the rap sheet that is an issue here is a massive, clearly has information relating to two different people, including a white person with red hair. OK, but the information that he had received to prove that he had a misdemeanor, he didn't obtain until 25 years later. But what the question is, was because of the claims that are made in the current proposed petition, he lacked the information. He appears he asserts because of ineffective assistance with both state trial counsel and state appellate counsel. But could he have just gotten the information himself? I mean, I my impression is it wasn't that hard for him to get this information recently. But how did he get the information? Right. But he's also alleging a Brady violation that the government didn't turn it over to him. And, you know, I think it's relevant that not only is not just that he's in prison, but he's illiterate. And it was and at this point he is demented. He has dementia. Well, how did he get it? How did he recently get this? What happened was that another prisoner who was assisting him with his case suggested a FOIA request. And that other prisoner, who also wrote the proposed petition here, made the FOIA request for him. And he was able to get it. And he saw the confusing rap sheets. And he filed the state habeas or excuse me, the new federal petition within a few months after that. Well, I guess what I'm saying is, given the fact that he was represented by counsel, none of whom, even though he told them about it, none of whom obtained that information. Then he didn't get it. And the state concedes that he did not get it from the prosecutor. And so now he's raising a Brady violation and prosecutorial misconduct that basically he didn't have a chance until fairly recently. And it was done by somebody else on his behalf because he can't read or write. And and he suffers from dementia. What do we do with the recent proceedings in Nevada? I'm sorry? What do we do with the recent proceedings in Nevada? OK, well, there's a couple of answers to that. Number one, the proceedings in Nevada did, of course, exhaust the issue, although something different ground than what I what what he alleged in twenty eighteen and what I, you know, raised in twenty eighteen in my brief. He exhausted it, but that doesn't have an effect on whether or not I want to come right to the point. What do we do now that we've gone back to the trial judge who said, I remember this case. I did not rely on the felony. I would have given him the four consecutive sentences, the four consecutive sentences anyway. And that has now been upheld on appeal. And now what do we do given that the allegations on the current proposed petition are different? They involve Brady violation, ineffective assistance with counsel and so on. I don't believe that that affects his argument that he has made a prima facie case of of evidence that if proven true would make a difference. There could be many different ways in which if you were to prove that he never had that information, that it was withheld from the government, that there was that there was a prosecutorial misconduct and so on that he might. But what what difference does it make, counsel, if we've been back to the to the trial judge who said you get the same sentence, even if even if you got all this, even if you knew about all the problems back in the early 1990s, this is the sentence that I was prepared to give you and the felony played no role. I mean, this is direct evidence of all the rest of the stuff is now irrelevant. Again, I don't know what to say, except that if the trial judge knew that the reasons that she didn't have this information was a Brady violation, was it was due to ineffective assistance of counsel, was due to prosecutorial misconduct and so on. That might that might make a difference. You're right that it makes it more difficult, makes more difficult. But it doesn't change the fact that he's made a prima facie case that if proven could change the result. OK, do you want to reserve time, counsel? Yes, please. OK, Mr. Bungard, you may proceed. You're on mute, sir. Sorry about that. My name's Michael Bungard. I represent the respondent, Isidro Baca, in this matter. Your Honor, 2244B2 lays out specific requirements that a defendant must satisfy in order to gain an exception to the general rule, which is that petitioners are prohibited from filing second or successive petitions. In this case, Mr. Thompson must prove the factual predicate for the claim could not have been discovered previously through the exercise of due diligence. And more importantly, the facts underlying the claim have proven and viewed in the light of the evidence as a whole, would be sufficient to establish in his burdens, clear and convincing evidence that before constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. The court, this court has expanded the underlying offense language to include actual innocence of an aggravator that would qualify the petitioner for the death penalty. But in there, at least to my research, there's nothing that the court has said that expands actual innocence to innocence of the sentence imposed. Mr. Thompson was convicted at trial of four counts of sexual assault of a minor. Sentencing transcripts go into detail of what the facts were in this case. But even if Mr. Thompson were to show that there was some error with regards to this, and my understanding from speaking with opposing counsel when he wanted to have additional briefing, is that this was a case in California where can be charged as a felony or a misdemeanor. He was convicted of the misdemeanor. So I don't think he can prove innocence of any factor that the court relied upon to impose the sentence in this case. And in this case, what happened was the court at the second sentencing hearing, because the court was concerned with the accuracy in the record, but the record and the transcript from the second sentencing hearing reflect quite clearly that the court questioned the parole and probation division who prepared the pre-sentence report in this matter, and that it was determined that there were a number of fingerprint cards that were obtained, and that in identifying the record of Mr. Thompson, it was confirmed that they used the misdemeanor fingerprint card. So that led to the statement by the court where she said that this wasn't a history devoid of any crimes or convictions, that it was a history that involved violent offenses, and the court reaffirmed that. Is there any evidence that the government knew that some of these crimes that were being attributed to him did not actually belong to him at the time? Well, I think there was a winnowing down of what was in the exhibit that Mr. Thompson submitted with his second petition, because if I remember right, there were about 16 or 17 entries on that. And in the pre-sentence investigation report, if my memory serves correctly, there were somewhere between 5 and 10 entries. So the process that was described as far as taking the fingerprint cards, matching them with Mr. Thompson's prints, it wasn't the entire record that Mr. Thompson found that was recreated in the pre-sentence report. And yes, the felony offense was listed as a felony, and as I understand again from Mr. Eibert, that it was it was pled to a misdemeanor because it's apparently one of those offenses in California that can either be convicted and sentenced as a felony or misdemeanor. So while the court, I mean, even if you even if you found or assumed arguendo that the court relied on it as a felony, it was still a conviction that was on his record and it would have been a misdemeanor rather than a felony. But I think the court made it clear that there were misdemeanors on the record that talked about violence, resisting battery, crimes that did not merit leniency in the eyes of the court. But his argument, as I understand it, is that he would not have received four consecutive sentences if the judge had seen that, had had the correct background report. And without regard to what has happened since, can we know under Nevada law whether he would have gotten the same sentence or not? Can we say that he wouldn't have received the four consecutive if he had the actual correct report there? No, Your Honor. There is nothing in Nevada law that automatically aggregates the sentences to consecutive based on a prior felony conviction. It was totally at the discretion of the sentencing judge. But the sentencing judge weighed in on it after the fact, right? And said that it wouldn't have, even knowing what apparently the facts are now, it wouldn't have changed. The difference between her order denying the motion to correct an illegal sentence versus her statement said sentencing, she quoted a block that talked about specifically the misdemeanors, then she weighed in after the fact with the statement that I believe more relying on the facts of the crime, but that was also discussed at the sentencing hearing. And the court did state in the actual transcript of the sentencing that in addition to the cited portion with regards to the prior convictions, and she specifically referred to misdemeanors, but she also gave weight to the argument of the state. I don't have the exact quote in front of me, but she did rely on the argument made by the state. And I think her summary in the motion to the order denying the motion to correct an illegal sentence, talked about the fact that the facts of the trial were that the defendant subjected the victim to almost daily abuse from age nine till after she turned 10 years old. Yes, that's correct. And so I guess to tie back to what Judge Schroeder said or asked in her question, there's no, as in a death penalty case where you can show that an aggravator is invalid, there's no such equivalent under Nevada law in this case that you would say, okay, we definitively have something that she can hang your hat on to say that the court relied upon suspect information in imposing the sentence that she did. There just is nothing like that. And again, that's why Nevada has that mechanism, or I would believe it would be part, because at any time a court can go back and look and see if they sentenced a defendant based upon suspect information. And the Nevada case law discussing that statutory provision is pretty strict, where they only allow those types of claims to be brought in those motions where the court did rely on suspect information, or that the sentence either exceeded the statutory maximum or for some reason was illegal under the law. And that just didn't happen in this case. So I would tie it more to while they couch it in a constitutional violation, in this case, they're basically asking for fact correction in this matter because the sentence was within the constitutional minimum and maximum, and the court had the discretion to run it either consecutively or concurrently based upon the facts. And that's what the court did. It exercised its discretion. Counsel, I'm trying to understand the implications of the materials that were provided to us recently about the developments in Nevada courts. So if we were to grant the SOS, we would send this back to district court. What would the district court do with it? Conduct a hearing and then ask the trial judge to come and testify? The trial judge has already ruled on this precise question, and it's been affirmed by the Nevada Court of Appeals. So where's the there there? What do we get? What would happen if we sent this back to the district court? Your Honor, I think part of it would be that at least to a claim that the court relied on suspect evidence. That claim is now exhausted to the extent that they would raise a Brady claim with regards to, you know, that the state allegedly hid some type of evidence or the FBI reports. I think the court can also see. I believe that the that he submitted part of the pre-sentence report with his second or successive petition. And it certainly doesn't match up item for item. Even if we had a even if we had a Brady, even if we had a Brady problem, what do we do when we have the district court who issued the sentence saying it didn't influence me and I would have given the same sentence? Well, I would I would I would think, Your Honor, that it would negate any type of showing or needed showing by the petitioner on the part of either prejudice under Brady. In other words, you know, was there some did this result in a or could this the error alleged error result in a different outcome? And I certainly think then it also negates showing prejudice under Strickland to any claim of ineffective assistance of counsel. Thank you, counsel. Thank you. Yeah. Yeah. And Mr. Ebert, we'll give you two minutes for rebuttal. Thank you, Your Honor. I think what we have here is the question is how to reconcile what appear to be directly contradictory statements by the sentencing judge. Time of sentencing in 1994, when she said, if it's a misdemeanor, I can't give you four consecutive life sentences. And then again in 2017, saying essentially the exact opposite. And the way how to reconcile that and why does it not make a difference? Well, it does make a difference. It makes it more difficult, obviously, for the petitioner. But when it was brought back to her on the the state statute that allows her to look at whether or not she had, you know, inadequate information or wrong information in sentencing. The only issue that was discussed was whether or not it was a misdemeanor or a felony. It was a misdemeanor that was not understood by the probation officer or the court of the sentencing court. What she just didn't have is all of the other factual information which can only be determined by a trial court or a federal habeas court. And that is the ineffective assistance of counsel. That is the Brady violation. Counsel, let's suppose that we approved your SOS. You went back to district court and you prevail on everything in district court. What does the district court give you? They give you a writ of habeas corpus and that requires what? It can't require a retrial on guilt. No, this doesn't go to guilt. This only goes to sentencing. We issue a writ of habeas corpus instructing the courts to re-sentence him? What remedy the district court gives, I can't necessarily predict, but I would think that it would be a re-sentencing in which the state trial court would have complete information about everything that happened. And how would that be different from what the trial judge did in 2017 that was affirmed by the Nevada Court of Appeals? I cannot say, and I don't think this court or the federal district court can say that if she knew everything that has been alleged and if it were proven, that that would not have made a difference to her sentence. All she said in 2017 was the mere fact that it was a misdemeanor wouldn't have changed the sentence, which is directly contrary to what she said in 1994. I think that there are facts that have to be developed and that could change the outcome in a re-sentencing. Mr. Thompson has been in prison for 27 years. He's 81. He's demented. He's a problematic prisoner from the point of view of the state prison system. I think that if the trial court came to a different conclusion, he would be eligible for parole. And I just think that somehow these facts have to be developed. And yeah, I probably would go back to the state court with the full facts to reconsider the sentence. Thank you, counsel. We thank both counsel for their arguments in this case, and the case is now submitted. And we're mindful of the request for supplemental briefing.
judges: Schroeder, Bybee, Nelson